**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDWARD FRANCIS CONLIN,

Defendant.

CASE NO. 3:26-MJ-39-SJF

**OPINION and ORDER**

This matter is before the Court as part of an extradition request from the

Government of the United Kingdom of Great Britain and Northern Ireland (hereinafter

"the United Kingdom"). Through an extradition treaty between the United Kingdom

and the United States of America,[1] the United Kingdom seeks to extradite Edward

Francis Conlin so that he may be prosecuted for seven counts of indecent assault against

a female, contrary to section 52 of the United Kingdom's Offences Against the Person

Act of 1861. The United States of America filed a complaint on May 13, 2026, wherein

---

[1] *See* Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., Mar. 31, 2003, S. TREATY DOC. NO. 108-23 (2004) (the "2003 Treaty"), and related Exchanges of Letters, as amended by the Instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003, U.S.-U.K., Dec. 16, 2004, S. TREATY DOC. NO. 109-14 (2006) (the "Instrument"), with Annex (the "Annex") reflecting the integrated text of the operative provisions of the 2003 Treaty and the Instrument (collectively, the "Treaty"). [*See* DE 1 at 15-33].

the Government requested a warrant for Mr. Conlin's arrest pursuant to this extradition treaty and in accordance with applicable federal statutes, 18 U.S.C. § 3184 et seq.

The Complaint states that a judge from Belfast, Northern Ireland issued a warrant for Mr. Conlin's arrest on August 12, 2025, after a woman in Northern Ireland reported on July 2, 2020, that she had been sexually abused by Mr. Conlin between May 18, 1992, and May 18, 1995, when she was a teenager and he was in his 30s. The Complaint charges that, at the time of the alleged abuse, the woman was a member of a local religious organization called the Youth Initiatives. [DE 1 at 2]. Members of the Youth Initiatives worked with members of another religious organization known as the Servants of the Word Brotherhood, of which Mr. Conlin served as a leader. The Complaint then details seven interactions of a sexual nature forming the seven counts of the Complaint and includes statements from six witnesses.

The Court issued an arrest warrant, and Mr. Conlin was subsequently arrested, on May 13, 2026. The Government now seeks to detain Mr. Conlin pending his extradition hearing and the Court's decision on extradition, stating its position in its Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings filed on May 14, 2026. Mr. Conlin seeks to be released while proceedings are pending. Mr. Conlin contends that "at least two special conditions [] apply in this case" to warrant his release and filed his Notice of Special Conditions on May 20, 2026. [DE 15 at 1]. The Government responded in opposition to Mr. Conlin's Notice on May 21, 2026, contending that Mr. Conlin has failed to establish that he is neither a flight risk nor a danger to the community, nor has he established the requisite special

circumstances that would warrant release on bail pending extradition. The United States Probation and Pretrial Services Office also interviewed Mr. Conlin and filed a Pretrial Services Report on May 21, 2026.

The Court held a detention hearing on May 22, 2026. During this hearing, the Court heard testimony from five witnesses called by Mr. Conlin and admitted evidence regarding his physical health. The Court also heard arguments from both parties. At the conclusion of the hearing, the Court took the matter of detention under advisement. For the reasons explained below, after reviewing the parties' filings, the pretrial services report, and the evidence and testimony presented at the detention hearing, the Court finds that no special circumstances warrant Mr. Conlin's release. Accordingly, Mr. Conlin should remain detained pending extradition proceedings, and the Court will grant the Government's motion for detention.

## I.    Summary of Facts Relevant to Detention

The following facts come from the Pretrial Services Report, the parties' filings, and the witness testimony and evidence put forth by Mr. Conlin at the detention hearing on May 22, 2026.

Mr. Conlin is 69 years old and is a citizen of the United States. [DE 17 at 1]. He has never married and has no children. [*Id.* at 2]. He has lived in South Bend, Indiana for the last three and a half years. Prior to moving to South Bend, he lived in Chelsea, Michigan, where he performed missionary work for the religious organization Servants of the Word. He worked with the homeless population as a substance abuse counselor, and he has a certification as a substance abuse counselor. Before working in Michigan,

his missionary work with Servants of the Word took him to various international locations, including Brussels, Belgium; London, England; Belfast, Northern Ireland; and Puerto Vallarta, Mexico. [DE 17, Hearing Testimony].

Mr. Conlin moved to South Bend three and a half years ago to help care for his brother who suffers from Severe Idiopathic Neuropathy, a medical condition where there is extensive nerve damage and no underlying cause can be found. Mr. Conlin's brother also suffers from mental health issues because of his condition and thus requires full-time care and companionship. Mr. Conlin is his primary caregiver. He lives with his sister, brother-in-law, and brother. Mr. Conlin has two other siblings who both live in Michigan. Mr. Conlin and his siblings are very close and communicate regularly, often through weekly zoom calls. [DE 17; Hearing Testimony]. Mr. Conlin is a practicing Catholic. He attends Catholic mass daily and regularly meets with a Catholic priest affiliated with the University of Notre Dame. Testimony from Mr. Conlin's priest and other witnesses report that he is a man of deep faith as a consecrated brother and that he is involved in the religious community in South Bend.

After moving to South Bend, Mr. Conlin began working approximately 30 hours a week at the Embassy Suites hotel as the breakfast services supervisor. As the breakfast services supervisor, Mr. Conlin works from approximately 5 am to noon. Mr. Conlin reports that his supervisor at the Embassy Suites is aware of these proceedings but would likely allow him to return to work if he were released.

Mr. Conlin reports various concerns with his physical health. Mr. Conlin underwent Cervical 360 Back and Neck Surgery in November 2025, where doctors put

4

approximately 24 screws in his back and neck to stabilize his spine. [DE 17; Hearing Testimony; Dft. Ex. A]. Mr. Conlin still has pain from the surgery and has been instructed to sleep with a special pillow and use a machine to help with bone growth. [DE 17]. Mr. Conlin also has an enlarged prostate that could indicate cancer, and he has suffered kidney stones multiple times. [*Id.*; Hearing Testimony]. He takes medication for these conditions.

Two of Mr. Conlin's siblings and two of his lifelong friends testified at the detention hearing. This testimony consistently depicted Mr. Conlin as a loyal and honest person with deep character and commitment to justice. [Hearing Testimony]. Witnesses also testified that they believe Mr. Conlin would abide by any conditions for release imposed by the Court, with Mr. Conlin's sister agreeing to be his custodian and to put up money and her house as collateral for his release.

## II.    Discussion

Extradition proceedings are a diplomatic process governed by 18 U.S.C. § 3181 et seq. As a matter of diplomacy, extradition is considered "neither civil nor criminal." *United States v. Nascimento*, No. 6:19-MC-48-ORL-78GJK, 2019 WL 5853874, at *1 (M.D. Fla. Nov. 8, 2019) The extradition process is outlined in 18 U.S.C. § 3184, which states that

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the

person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. Such complaint may be filed before and such warrant may be issued by a judge or magistrate judge of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

Before the Court decides whether to extradite under this provision, however, the Court must address whether a defendant should be detained pending the outcome of extradition proceedings.

The Supreme Court has stated that "bail should not ordinarily be granted in cases of foreign extradition[.]" *Wright v. Henkel*, 190 U.S. 40, 63, 23 S. Ct. 781, 787, 47 L. Ed. 948 (1903). Therefore, there is "a presumption against bail in an extradition case." *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 686 (N.D. Ill. 2002). "The traditional rationale for the presumption is that the individual, if released, could abscond, leading to serious embarrassment to the United States and a potential that reciprocating foreign countries would not honor this country's extradition requests." *Matter of Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *3 (N.D. Ill. Dec. 19, 2017). Indeed, as extradition is diplomatic—and not a matter of civil or criminal law—the Federal Rules of Criminal Procedure and the Federal Rules of Evidence do not apply to extradition hearings. *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981)

6

But this does not mean that "courts possess no power in respect of admitting bail" in extradition cases. *Wright*, 190 U.S. at 63. To be released pending extradition, a defendant facing extradition "has the burden[2] of establishing special circumstances in order for a court to order pre-hearing conditional release." *In re Extradition of Molnar*, 182 F. Supp. 2d at 686 (internal citations omitted). "'Special circumstances' is an amorphous concept that 'require[s] a cautious judgment by the judge, taking into account the totality of the facts and having a healthy respect for [the requesting] country's international treaty agreements.'" *Matter of Extradition of Tautvydas*, No. 22 CR 615, 2023 WL 1069853, at *6 (N.D. Ill. Jan. 27, 2023)(internal citations omitted). Thus, "judges have significant discretion in deciding what constitutes a special circumstance . . . given the lack of binding case law, lack of definition of the term special circumstances, and conflicting decisions among district courts across the country." *Matter of Extradition of Pappas*, No. 23 CR 515, 2023 WL 7220053, at *4 (N.D. Ill. Nov. 2, 2023). In addition to showing "special circumstances," a defendant seeking release pending extradition must also show that "they are neither a flight risk nor a danger to the community." *Id.* at *2.[3]

---

[2] The Court notes that "which standard of proof applies to bond proceedings in extradition cases has not been resolved." *Matter of Extradition of Pappas*, No. 23 CR 515, 2023 WL 7220053, at *5 (N.D. Ill. Nov. 2, 2023). Some courts have found that a defendant must establish special circumstances by a "preponderance of the evidence" while others have found that the showing requires "clear and convincing evidence." *Id.* The Court need not decide this question today because the Court cannot find that Mr. Conlin presented sufficient evidence of special circumstances under either standard.

[3] Although courts agree that this showing is required in addition to showing special circumstances, courts diverge on whether this showing is a precondition to considering special circumstances or whether it is simply "a separate, independent factor" for the Court to address. *Matter of Extradition of Brunner*, No. 24-MJ-49, 2024 WL 3566227, at *2 (D.D.C. July 29, 2024)(collecting and comparing cases). The Court need not decide whether this showing is a "prerequisite" to consideration of special circumstances or a separate inquiry here. *Id.* As explained below, the Court cannot find that Mr. Conlin has shown special circumstances warranting his release.

As stated, Mr. Conlin maintains that there are "at least two" special circumstances warranting his release. [DE 15 at 1]. First, he contends that bail is available for the alleged substantive offense in the United Kingdom. Second, Mr. Conlin alleges that bail is available in a parallel situation where an individual in the United Kingdom is facing extradition proceedings. [*Id.* at 3]. Mr. Conlin also put forth evidence of his serious health conditions, his role as primary caregiver for his brother, and his faith and character as special circumstances warranting release.[4]

### A.     Availability of Bail in the United Kingdom

Mr. Conlin first argues that district courts have granted bail in an extradition proceeding when the alleged substantive offense is eligible for bail in the country requesting extradition. In support, Mr. Conlin directs the Court to the following cases: *In re Extradition of Morales*, 906 F. Supp. 1368, 1374 (S.D. Cal. 1995); *In re Gannon*, 27 F.2d 362, 364 (E.D. Pa. 1928); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1221 (D. Nev. 1993); and *United States v. Taitz*, 130 F.R.D. 442, 447 (S.D. Cal. 1990).

But as the Government argued in its response to Mr. Conlin's Notice, most courts have found that "bail availability" in the country seeking extradition is not properly considered a special circumstance. *See, e.g.*, *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1299 (S.D. Fla. 2017)(rejecting the bail availability argument and collecting cases doing the same); *Matter of Extradition of*

---

[4] These circumstances are also relevant to a showing that he is not a flight risk or danger to the community, and Mr. Conlin may have put forth this evidence primarily to make these showings. But, as stated supra in footnote 2 above, the Court will not reach the flight risk or danger to the community factors here, so the Court will address these arguments as much as they can be construed as a showing of special circumstances.

*Antonowicz*, 244 F. Supp. 3d 1066, 1070 (C.D. Cal. 2017)("[T]he availability of bail in the extraditing country is not a special circumstance."); *Drumm v. McDonald*, No. CV 15-14221-RGS, 2016 WL 111411, at *4 (D. Mass. Jan. 11, 2016) ("Foreign bail practices should have no role in shaping the discharge by a United States court of its limited duties in adjudicating an extradition demand."); *Extradition of Azizi*, No. 5:14-XR-90282 PSG, 2014 WL 1995083, at *2 (N.D. Cal. May 13, 2014)("[T]his court agrees with the reasoning of others . . .who conclude that the availability of bail in the requesting country is not a special circumstance."); *In re the Extradition of Kyung Joon Kim*, No. CV043886ABCPLA, 2004 WL 5782517, at *2 (C.D. Cal. July 1, 2004)("The court concludes that the better reasoned cases are those that rejected the availability of bail as a special circumstance."). Indeed, as the Government argues, another court within this circuit explicitly distinguished two cases cited by Mr. Conlin, *In re Extradition of Nacif-Borge* and *In re Gannon. See Matter of Extradition of Rouvier*, 839 F. Supp. 537, 540 (N.D. Ill. 1993). There, the court found that *In re Gannon* was "not relevant" because it "conflicts with current federal law" and that consideration of bail availability as a special circumstance by the court in *Nacif-Borge* was "improper." *Id.* The court thus rejected bail availability as a special circumstance.

It is Mr. Conlin's burden to show that a special circumstance warrants his release. *In re Extradition of Molnar*, 182 F. Supp. 2d at 686 (internal citations omitted). Without more, the Court cannot find that Mr. Conlin's reliance on what appears to be a minority of cases –cases decided more than thirty years ago and that have been expressly distinguished by other courts—meets this burden. Accordingly, the

availability of bail in the United Kingdom for the alleged charge is not a special circumstance warranting release here.

B.       Availability of Bail in Extradition Cases in the United Kingdom

Next, Mr. Conlin argues that district courts have found that the availability of bail for similarly situated extraditees in the country requesting extradition constitutes a special circumstance warranting release, again citing *In re Extradition of Morales*, 906 F. Supp. at 1374; *In re Extradition of Nacif-Borge*, 829 F. Supp. at 1220; and *United States v. Taitz,* 130 F.R.D. at 446. Mr. Conlin argues that, under the laws of the United Kingdom, a person facing extradition from the United Kingdom to the United States may be granted bail pending a decision on extradition. [DE 15 at 4]. Mr. Conlin also presents the following examples of individuals released on bail pending extradition to the United States from the United Kingdom—Julian Assange, Lauri Love, and numerous unnamed individuals charged with commercial fraud and cybercrime. [DE 15 at 4].

Courts have indeed found "the fact that [the extraditing country] would grant bail to defendants facing extradition for similar offenses is a special circumstance." *United States v. Kollmar*, No. 19MJ70677MAG1KAW, 2019 WL 2163005, at *4 (N.D. Cal. May 17, 2019). Though Mr. Conlin states this initially [*see* DE 15 at 3], by the conclusion of his argument, it morphs into more of a generalization. Mr. Conlin concludes by stating that "because a person in the United Kingdom whose extradition is sought would be eligible for bail/release pending the conclusion of the extradition hearings there, this constitutes another 'special condition'"—without expressly stating that the extradition is for an equivalent charge. [DE 15 at 4].

All three cases relied upon by Mr. Conlin considered the availability of bail for an American extraditee for an equivalent offense. *See Matter of Extradition of Morales,* 906 F. Supp. at 1375-76 (discussing availability of bail in the context of a similarly situated extraditee in the requesting country). Moreover, other two courts cited by Mr. Conlin both considered whether the defendant put forth evidence showing that the requesting country granted bail for an individual facing extradition for a similar charge. In *Nacif-Borge*, the Court noted that "Nacif has presented no evidence on whether Mexico would grant bail to a U.S. citizen facing extradition for similar income tax charges under equivalent circumstances in Mexico" and accordingly, found that he failed to meet burden of showing that this was a special circumstance. 829 F. Supp. at 1220. The court in *Nacif-Borge* also explained that "even if Nacif did show that Mexico would grant bail to an American in this situation, it does not automatically follow that Nacif is entitled to bail." *Id.*

Likewise, while the Court in *Taitz* did state that "[t]he law of South Africa permits a magistrate to admit to bail a person facing an extradition hearing" as part of its rationale, the court in *Taiz* found that the defendant met his burden of showing this to be a special circumstance because he presented evidence of an individual facing extradition for a similar charge released on bail. 130 F.R.D. at 446-447 ("Counsel for Taitz brought to the court's attention a newspaper article of March 24, 1990 in the Johannesburg *Citizen* revealing that a court in Johannesburg released on bail a defendant who was facing extradition to the District of Connecticut on charges of conspiracy to illegally import endangered wildlife and machine guns, smuggling, and

11

making false statements to a U.S. government agency. The false statements charge is not unlike the charge in the present case.")[5]

Based on this, the Court cannot find that Mr. Conlin has met his burden here, as none of the examples presented in his Notice were of individuals facing a similar charge. *See United States v. Snyder*, No. 13-7082-MJ, 2013 WL 1364275, at \*6 (D. Ariz. Apr. 3, 2013) (denying bail pending extradition because the defendant did "not provide[] any evidence of a Canadian court granting release on bail to a United States citizen facing extradition on charges similar to those at issue here."). Mr. Conlin's showing is similarly deficient. As stated, Mr. Conlin presented the examples of Lauri Love, Julian Assange, and other unnamed individuals charged with financial and cybercrimes. [DE 15 at 4]. Lauri Love was indicted on charges related to computer hacking, aggravated identity theft, access device fraud, and conspiracy. Julian Assange was charged with 17 counts of violating the Espionage Act and one count of computer misuse. The other references were for financial and cybercrimes. While it may be true that these individuals were granted bail pending extradition, Mr. Conlin does not explain whether, or how, these charges are considered equivalent to the charges alleged here, and the Court can find no equivalence. Thus, Mr. Conlin has failed to meet his burden to show that this constitutes a special circumstance.

---

[5] Moreover, this was one of multiple special circumstances the court found in *Taitz* to warrant the defendant's release. "[W]ithout establishing any other special circumstances, the availability of bail in a requesting country . . . for extradition is not, in and of itself a special circumstance." *Matter of Extradition of Leon Heras*, No. 22-MJ-271 (TAM), 2022 WL 3909174, at \*8 (E.D.N.Y. Aug. 31, 2022).

### C.    Mr. Conlin's Health, Caregiving Responsibilities, and Character

Mr. Conlin also presented evidence about his physical health, caregiving responsibilities, and character. While much of the evidence is relevant to considerations of whether Mr. Conlin is a flight risk or danger to the community, because the Court does not reach those issues, the Court addresses this evidence to the extent it has been presented to show special circumstances.

### 1.    Health Concerns

Mr. Conlin underwent Cervical 360 Back and Neck Surgery in November 2025. Evidence presented at the hearing shows that doctors put approximately 24 screws in his back and neck to stabilize his spine. [DE 17; Hearing Testimony; Dft. Ex. A]. Mr. Conlin still has pain from the surgery and has been instructed to sleep with a special pillow and use a machine to help with bone growth. [DE 17]. Mr. Conlin also has an enlarged prostate that could indicate cancer, and he has suffered kidney stones multiple times. [DE 17; Hearing Testimony]. He takes medication for these conditions.

But the record also shows that Mr. Conlin's cervical surgery was six months ago and that he had since returned to his 30 hour-a-week week job and his caregiving duties for his ill brother. As the Government argued during the detention, this suggests that Mr. Conlin does remain sufficiently able bodied despite these issues. In any event, nothing in the record suggests "those conditions in and of themselves are [] life-threatening," which falls short of his burden here. *Nascimento*, 2019 WL 5853874, at *3. Moreover, nothing in the record suggests that his conditions cannot be managed by the detention facility or that the facility is unable to provide him adequate treatment. *In re*

*Extradition of Gohir*, No. 2:14-MJ-00314-CWH, 2014 WL 2123402, at \*12 (D. Nev. May 21, 2014) ("[The fugitive] has referenced on multiple occasions that he is diabetic and will not be able to receive adequate treatment if detained. There is nothing indicating that the detention facility is unable to meet [the fugitive's] medical needs. Nor is there any indication that his health has deteriorated or that he has been unable to receive treatment during his detention."); *In re Extradition of Huerta*, No. H-08- 342M, 2008 WL 2557514, at \*2 (S.D. Tex. June 23, 2008) (high blood pressure, diabetes requiring daily medication and strict diet, prostate problems, and anemia not "special circumstances"); and *In re Rouvier*, 839 F. Supp. at 542 (no special circumstances where daily medication could be provided by detention facility).

### 2.    Caregiving Responsibilities

Mr. Conlin also presented evidence that he serves as the primary caregiver for his brother, who has Severe Idiopathic Neuropathy, a medical condition where there is extensive nerve damage and no underlying cause can be found, and mental health concerns. The evidence presented to the Court about Mr. Conlin's caregiving role was credible, but courts consistently "have rejected familial caretaking responsibilities as a special circumstance." *Matter of Extradition of Taylor*, 471 F. Supp. 3d 389, 396 (D. Mass. 2020)(collecting cases and finding that the defendant's caregiving responsibilities for his 81-year stepfather with many health issues likewise was not a special circumstance); *see also UNITED STATES OF AMERICA, Plaintiff, v. MEDHAT MOURID, Defendant.*, No. 2:26-CV-02074-SB-MAA, 2026 WL 1455318, at \*4 (C.D. Cal. Apr. 29, 2026). Mr. Conlin cites no case law to show that his caregiving responsibilities are a special circumstance

14

here. Still, the Court has considered one instance where a defendant's caregiving responsibilities constituted a special circumstance. *See Matter of Extradition of Netzky*, No. 3:20-mj-220, 2022 WL 2315976, at *1 (D. Or. June 28, 2022). *Netzky* is clearly distinguishable, as the Court cannot find Mr. Conlin's role to be as critical as that considered in *Matter of Extradition of Netzky*. There, the court noted that "Netzky's familial caretaking responsibilities, including government-certified care of a disabled spouse and primary care of a young daughter, rendered more critical in light of Covid-19" were considered a special circumstance for release. 2022 WL 2315976, at *1. Here, however, the record shows that Mr. Conlin worked thirty hours a week in addition to caring for his brother, and Mr. Conlin and his brother live with their sister and brother-in-law. Moreover, the court in *Netzky* did not grant release solely based on the defendant's critical caregiving role, instead noting that release was based on finding that multiple special circumstances were shown. *Id.* But here, none of the individual circumstances raised by Mr. Conlin constitute a special circumstance. Accordingly, the Court cannot find his caregiving responsibilities to be a special circumstance warranting his release.

### 3. Mr. Conlin's Character

Mr. Conlin called five witnesses to testify during his detention hearing on May 22, 2026. These witnesses included two of his siblings, two lifelong friends, and a priest who serves as his spiritual counselor and advisor. These witnesses consistently testified that Mr. Conlin is a loyal and honest person with deep character, a commitment to justice, and religious faith. Although the Court found these witnesses to be sincere and

15

credible, to the extent Mr. Conlin presented these witnesses to demonstrate a special circumstance, the law is clear—"an extradition fugitive's character and background . . . are not by themselves a special circumstance." *Matter of Extradition of Sutton*, 898 F. Supp. 691 (E.D. Mo. 1995). *See also Matter of Extradition of Noeller*, 2017 WL 6462358, at *5 ("Thus, the several affidavits submitted by Burgos Noeller with his motion for bond, even assuming them to be not merely the predictable response and assessment of friends and family, do not decide the issue of the propriety of the granting of bond in this case."); *In re Extradition of Beres Ford-Redman*, 753 F. Supp. 2d 1078, 1089 (C.D. Cal. 2010) ("To the extent the letters of support make some showing that Beresford–Redman is trustworthy, the Court nevertheless finds that this does not establish a special circumstance in the present case[.]"); and *Matter of Extradition of Nacif-Borge*, 829 F. Supp. at 1220 ("While the court applauds the efforts taken to compile this multitude of letters, and the past integrity demonstrated by Nacif to win the confidence of so many individuals, bail would be inappropriate on this basis."). Accordingly, the Court cannot find that Mr. Conlin's character and background are a special circumstance.

## III.    Conclusion

For these reasons, the Court finds that there are no special circumstances that would warrant Mr. Conlin's release pending his extradition hearing and the Court's decision on extradition. Accordingly, the Government's Request for Detention is **GRANTED** and Mr. Conlin will **REMAIN** detained in the custody of the United States Marshal pending further proceedings. [DE 7].

**SO ORDERED** this 29th day of May 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge